UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IRENE PORTER, on behalf of herself
and all others similarly situated,

Plaintiff,

v.

COLGATE-PALMOLIVE COMPANY,
a Delaware corporation.

Defendant.

CASE NO.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

2:11-cv-644-FtM-36SPC

## CLASS ACTION COMPLAINT

Plaintiff Irene Porter, by and through undersigned counsel, brings this action on her own behalf and on behalf of a Class of persons defined below against Defendant, Colgate-Palmolive Company ("Colgate" or "Colgate-Palmolive" or "Defendant"), and for her Complaint alleges, upon information and belief and based on the investigation to date of her counsel, as follows:

### NATURE OF THE ACTION

1.      This is a class action arising from Colgate's unfair, deceptive, false, and otherwise improper advertising, sales, and marketing of Softsoap Antibacterial hand soaps ("Softsoap Antibacterial" or the "Product").

2.      As more fully alleged herein, Colgate falsely advertises that Softsoap Antibacterial is more effective than ordinary liquid hand soap at killing germs when, in fact, Softsoap Antibacterial is not any more effective than ordinary and less expensive liquid hand soap.

3.      Unlike ordinary liquid hand soap, Softsoap Antibacterial contains "triclosan" as its active ingredient at a concentration of between 0.115% and 0.15%. Triclosan is a chlorophenol that can function as an antibacterial and antifungal agent in certain circumstances. However, the United

States Food and Drug Administration ("FDA") has not received evidence that triclosan added to hand soap provides an extra benefit to health and has further stated that "the agency does not have evidence that triclosan in antibacterial soap and body washes provides any benefit over washing with regular soap and water."

4.      If fact, due to studies showing that triclosan alters hormone regulation in animals and may contribute to making bacteria resistant to antibiotics, the FDA has engaged in an ongoing scientific and regulatory review of the safety of triclosan in regulated products, including hand soaps.

5.      By falsely claiming that Softsoap Antibacterial is more effective than ordinary liquid hand soap, and by disseminating these false claims to consumers nationwide through television commercials, Internet websites, print advertisements, Product packaging, and through other forms of promotional media, Defendant intended to induce – and did induce – unsuspecting consumers to purchase triclosan-containing Softsoap Antibacterial or to pay more for Softsoap Antibacterial than they otherwise would have, resulting in millions of dollars of revenue for Defendant.

6.      Furthermore, to this day, Colgate has taken no meaningful steps to remedy consumers' misconceptions regarding the effectiveness of Softsoap Antibacterial that Colgate created through its false advertising and marketing campaigns.

7.      Since introducing the Product, Defendant's nationwide advertising campaign for the Product has been extensive and Defendant has spent a significant amount of money to convey its deceptive messages to consumers throughout the United States.

8.      Each person who purchased the Product was exposed to Defendant's false claims regarding the allegedly greater effectiveness of Softsoap Antibacterial versus ordinary soap, purchased the Product in reliance on that false claim, and paid more for the Product than they otherwise would have or would have not purchased the Product at all.

9.     As a result of Colgate's misrepresentations and/or omissions regarding Softsoap Antibacterial, Plaintiff and the other Class members substantially overpaid for the Product because the value of the Product was diminished at the time it was sold to consumers.  Had Plaintiff and the other Class members been made aware that the Softsoap Antibacterial provides no benefit over washing with ordinary soap and water, contrary to what Colgate represented, and that the Product may encourage growth of antibiotic-resistant bacteria, Plaintiff and the other Class Members would not have purchased Softsoap Antibacterial at all or would have paid less for it.

10.     Plaintiff and the other members of the Class have sustained injuries in fact caused by Defendant's conduct as alleged herein.

11.     Plaintiff brings this lawsuit against Defendant on behalf of herself and a class of all other similarly-situated Florida purchasers of Softsoap Antibacterial alleging violation of Florida state law, breach of express warranty, unjust enrichment, and for injunctive and declaratory relief.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1332(d)(2), in that (i) there is complete diversity (Plaintiff is a citizen of Florida and Defendant is incorporated in Delaware, and, to the extent pertinent, maintains its principal place of business in New York), (ii) the amount in controversy exceeds $5,000,000 exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiff class.

13.     This Court has jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint took place in the State of Florida and because Defendant is authorized to do business in the State of Florida.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District; because Defendant has intentionally availed itself of the laws and markets within this District through the promotion,

marketing, distribution and sale of its products in this District, including the Product that is the subject of this suit; because Defendant does substantial business in this district; and because Defendant is subject to personal jurisdiction in this District.

## PARTIES

### *Plaintiff*

15.     Plaintiff Irene Porter is a resident of Lee County, Florida.   Plaintiff purchased Softsoap Antibacterial from retail stores located in Lee County, Florida on numerous occasions throughout the class period. Plaintiff was exposed to and saw multiple forms of Defendant's advertisements for Softsoap Antibacterial including Defendant's packaging for Softsoap Antibacterial, all of which repeated, in substantially the same form, Colgate's false claims regarding Softsoap Antibacterial's greater effectiveness than ordinary liquid hand soap.   Plaintiff relied on Defendant's false claims, purchased Softsoap Antibacterial, and as a result suffered injury in fact and lost money.

### *Defendant*

16.     Colgate is incorporated in the State of Delaware, with its principal place of business and corporate headquarters in New York, New York.   Colgate is a leading consumer products company whose products are marketed in over 200 countries and territories throughout the world. Colgate promotes, markets, distributes, and sells a broad range of well-known branded products, including toothpastes, tooth brushes, liquid hand soaps, bar soaps, shower gels, deodorants, antiperspirants, dishwashing liquids, household cleaners, and pet foods throughout the United States, including to tens of thousands of consumers in the State of Florida.

## FACTUAL ALLEGATIONS

### *The Product*

17.     Colgate advertises, promotes, and sells a wide range of branded products throughout Florida and the United States, including body washes, bar soap, liquid hand soap, and hand sanitizers, including its Softsoap Antibacterial line of products.

18.     Softsoap Antibacterial Hand Soap contains "Triclosan 0.115%" as its active "antibacterial" ingredient.

19.     Triclosan was originally developed as a pesticide, was later used as a surgical scrub for medical professionals, and in recent years has been added to many consumer products, including soaps and toothpastes.

20.     Triclosan is a chlorophenol.   Chlorophenols are commonly used as pesticides, herbicides, and disenfectants; triclosan is specifically registered with the United States Environmental Protection Agency as a pesticide and has been given high scores by the EPA both as a human health risk and as an environmental risk.

21.     Chlorophenols, including triclosan, are suspected of causing cancer in humans and triclosan is specifically believed to be an endocrine disruptor that may interfere with thyroid hormone function.

22.     The European Union recently banned triclosan from items expected to come into contact with food and set limits on the amount of triclosan that can be in cosmetics.  In addition, several countries – including Canada, Norway, Germany, Sweden, Finland, and Japan – have either restricted, required warning labels, or advised consumers against use of products containing tricolsan.

23.     Ordinary liquid hand soaps do not contain triclosan.

***Defendant's False Advertisements, Marketing, and Promotion of Softsoap Antibacterial***

24.     Defendant's false, misleading, and deceptive marketing campaign begins with the name of the product at issue: "Softsoap *Antibacterial*." This product name implies that Softsoap Antibacterial will destroy more bacteria than ordinary hand soap. Defendant's exhaustive advertising campaign builds on this deception. In truth, Defendant has no independent, competent, and reliable support for these claims.

25.     Throughout the class period defined below, Colgate has deceptively and unfairly promoted Softsoap Antibacterial to consumers as having different special health benefits than ordinary liquid hand soap, including, but not limited to, being clinically proven to eliminate 99% of the germs your family encounters, and that it is Dermatologist tested.

26.     Colgate repeats its false and deceptive claims regarding greater effectiveness than ordinary liquid hand soap on the packaging for Softsoap Antibacterial, by prominently indicating that Softsoap Antibacterial "eliminates 99% of germs" and that Softsoap Antibacterial Hand Soap is "clinically proven to eliminate 99% of the germs your family encounters." Examples of Softsoap Antibacterial's packaging and label are reproduced below:



//

//

//

//

//

//





8

27.     Colgate further repeats its false and deceptive claims regarding Softsoap Antibacterial on its webpage for Softsoap Antibacterial: http://www.colgate.com/app/Softsoap/US/EN/Liquid-Hand-Soap/Classics.cvsp.   Particularly, Colgate states on the website that Softsoap Antibacterial Hand Soap is "clinically proven to eliminate 99% of the germs your family encounters." *See* http://www.colgate.com/app/Softsoap/US/EN/Liquid-Hand-Soap/Classics.cvsp.

28.     Furthermore, Colgate repeats these false and deceptive claims on its publicly accessible commercial products webpage for Softsoap Antibacterial, claiming that Softsoap Antibacterial Hand Soap is "clinically proven to eliminate 99% of germs" and "offers antibacterial protection."   *See* http://www.colgatecommercial.com/Softsoap®-brand-Antibacterial-Hand-Soap-with-Light-Moisturizers-01901.aspx

29.     Colgate reinforces the false and deceptive claims that Softsoap Antibacterial Hand Soap is more effective than ordinary liquid hand soap in that it is "clinically proven to eliminate 99% of germs" and "offers antibacterial protection" by stating "Goodbye germs. Hello world" on Colgate's webpage for Softsoap.

*See*  http://www.colgate.com/app/LatherUpForGoodHealth/US/EN/home.cwsp.

30.     Colgate further reinforces these false and deceptive claims regarding Softsoap Antibacterial on Colgate's webpage for Softsoap by stating that Softsoap is "America's most trusted hand soap."

*See* http://www.colgate.com/app/LatherUpForGoodHealth/US/EN/home.cwsp.

31.     Thus, Colgate deceptively and unfairly implies that Softsoap Antibacterial's active ingredient – triclosan – enables Softsoap Antibacterial to outperform other soap products.

32.     Defendant Colgate deceptively and unfairly claims and implies in its statements about Softsoap Antibacterial's greater effectiveness and superiority are backed by a competent, credible and reliable clinical study. But the advertising for Softsoap Antibacterial fails to disclose

9

which clinical studies Colgate purports to rely on for substantiation of its claims.  Nor has Colgate otherwise indicated how it has substantiated its claims that Softsoap Antibacterial is "clinically proven to eliminate 99% of germs."

33.     Colgate's nationwide advertising campaign for Softsoap Antibacterial has been extensive and comprehensive.  Colgate-Palmolive has spent millions of dollars to convey the deceptive messages outlined above to consumers throughout the United States.   Defendant conveyed and continues to convey deceptive claims about Softsoap Antibacterial through a variety of media, including television, newspapers, Internet, promotional placements, point-of-sale displays, and on Softsoap Antibacterial labels and packaging.

34.     Colgate's advertising and marketing campaign sends the unmistakably clear, but unconscionably deceptive and unfair message, that Softsoap Antibacterial is more effective at eliminating germs, protecting the consumer from germs, and thus preventing illness and promoting good health, than washing with ordinary liquid hand soaps that do not carry the risks associated with triclosan.

35.     Colgate's advertising and marketing campaign is designed to cause consumers to buy Softsoap Antibacterial on the basis that it is more effective than washing with regular soap and water and, thus, is worth purchasing at all or is worth purchasing for a higher price than consumers would otherwise pay.  As a result of this false and misleading campaign, Colgate has elevated Softsoap Antibacterial to the number one seller in the antibacterial hand soap product category.

36.     But despite the ubiquity of Colgate's claims and advertisements regarding the superior effectiveness of Softsoap Antibacterial, Softsoap Antibacterial does not eliminate more germs and is not any more effective than ordinary, at times less expensive, non-triclosan containing liquid hand soap.

*Softsoap Antibacterial is NOT More Effective than Ordinary Liquid Hand Soap*

37.     Colgate's advertising message ignores the well-supported fact that washing with ordinary liquid hand soap is just as effective as washing with Softsoap Antibacterial regardless of Softsoap Antibacterial's triclosan content.

38.     Colgate's claims about Softsoap Antibacterial's effectiveness and superiority are false, deceptive, unfair, and unconscionable because there is not sufficient, competent, and/or reliable scientific evidence and/or substantiation for Colgate's effectiveness and superiority claims concerning its Softsoap Antibacterial products.

39.     Specifically, Colgate has no competent, credible, and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate its claims regarding the superior effectiveness of Softsoap Antibacterial.

40.     Rather, numerous scientific studies have reached the opposite conclusion – that triclosan containing soaps that are available in the consumer setting, such as Softsoap Antibacterial, are no more effective than ordinary liquid hand soaps that do not contain triclosan.

41.     For example, the Council on Scientific Affairs of the American Medical Association noted in 2002 that "[d]espite the recent substantial increase in the use of antimicrobial ingredients in consumer products, the effects of this practice have not been studied extensively.  No data support the efficacy or necessity of antimicrobial agents in such products, and a growing number of studies suggest increasing acquired bacterial resistance to them.  Studies also suggest that acquired resistance to the antimicrobial agents used in consumer products may predispose bacteria to resistance against therapeutic antibiotics, but further research is needed.  Considering available data and the critical nature of the antibiotic-resistance problem, it is prudent to avoid the use of antimicrobial agents in consumer products." *See* Tan, Litjen *et al.*, *Use of Antimicrobial Agents in Consumer Products, Abstract,*

Archives of Dermatology 2002; 138: 1082-1086 (August 2008), *available at* http://archderm.ama-assn.org/cgi/content/abstract/138/8/1082/.

42.     Researchers from the University of Michigan, Columbia University, and Tufts University concluded that "Soaps containing triclosan within the range of concentrations commonly used in the community setting (0.1%-0.45% wt/vol) were no more effective than plain soap at preventing infectious illness symptoms and reducing bacterial levels on the hands." *See* Aiello *et al.*, *Consumer Antibacterial Soaps: Effective or Just Risky?*, Clinical Infectious Diseases Supplement Article, 2007:S45       (Suppl.       2)       (2007)       *available       at* http://www.tufts.edu/med/apua/practitioners/infection_control_11_3141468025.pdf.

43.     Another double-blinded, randomized clinical trial involving more than 200 inner city households by Columbia University researchers measured the effects of handwashing with a plain or antimicrobial (containing 0.2% Triclosan) soap on bacterial counts of the hands before and after a single wash and before and after handwashing following a year of product use concluded that "there was very little measurable effect of handwashing on microbial counts on hands. In fact, following a single wash (i.e. the baseline sample) there was no significant reduction in CFU [(Colony Forming Units, a microbial metric)] for persons using an antimicrobial soap" and "found little difference in microbial counts on hands of those using either product[.]" *See* Larson, *et al.*, *Short- and Long-Term Effects of Handwashing with Antimicrobial or Plain Soap in the Community*, J. Community Health, Vol. 28, No. 2, pp. 145, 148 (April 2003).

44.     Similarly, the FDA noted that it "does not have evidence that triclosan in antibacterial soaps and body washes provides any benefit over washing with regular soap and water" and "does not have evidence that triclosan added to antibacterial soaps and body washes provides extra health benefits over soap and water." FDA Consumer Health Information, *Triclosan: What*

*Consumers      Should      Know,*      (April      2010)      *available*      *at*
http://www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM206222.pdf.

45.     In this same consumer update, the FDA further noted that "several scientific studies have come out since the last time FDA reviewed [triclosan] that merit further review," that "Animal studies have shown that triclosan alters hormone regulation" and that "In light of questions raised by recent animal studies of triclosan, FDA is reviewing all of the available evidence on this ingredient's safety in consumer products. FDA will communicate the findings of its review to the public in spring 2011." *Id.* Although the FDA indicated it would communicate new findings in spring 2011, it has delayed doing so.

46.     Furthermore, on April 8, 2010, Representative Edward J. Markey, chairman of the House Energy and Commerce Subcommittee on Energy and the Environment urged a ban on many applications of triclosan, including in consumer soaps and hand washes, stating that "There is clear evidence that many consumer products that contain [triclosan] are no more effective than those that do not.   However, triclosan continues to be used in products that saturate the marketplace. Consumers – especially parents – need to know that many of these products are not only ineffective, they      may      also      be      dangerous."      Statements      available      at http://markey.house.gov/index.php?option=content&task=view&id=3964&Itemid=125      (last visited Aug. 23, 2011).

47.     On May 21, 2010, Andrew D. Hendry, Colgate-Palmolive's Senior Vice President, issued a response to Representative Edward J. Markey's concerns.   Mr. Hendry stated that Colgate-Palmolive does not specifically market products that contain triclosan to children.   Further, Mr. Hendry stated that Colgate-Palmolive plans to introduce antibacterial dishwashing formula that does not contain triclosan as a result of consumer preference.

48.     Despite this growing anti-triclosan consumer preference and the above mentioned studies, Colgate-Palmolive continues to sell and market Softsoap Antibacterial Hand Soap.

49.     Moreover, despite the overwhelming scientific evidence contrary to Colgate's false claims regarding the superior effectiveness of Softsoap Antibacterial, Colgate continues to make these claims in order to induce consumers, including Plaintiff and the other Class members, to purchase Softsoap Antibacterial at all or to have purchased Softsoap Antibacterial for a greater price than they otherwise would have paid.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of a Class ("Class") defined as:

> **All Florida residents who purchased Softsoap Antibacterial products within the statutory limitations periods applicable to the herein-alleged causes of action including, without limitation, the period following the filing of this action.**

Excluded from the Class are Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judges to whom this case is assigned and any immediate family members thereof.

51.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

52.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. Plaintiff is informed and believes that there are not less than tens of thousands of purchasers of Softsoap Antibacterial products in the State of Florida. The precise number of Class members and their addresses is unknown to Plaintiff, but may be ascertained from Defendant's books and records.

14

Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

53. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law or fact which predominate over any questions affecting individual Class members. Common questions of law or fact, include, without limitation:

 a. whether Defendant's claims regarding Softsoap Antibacterial are false, deceptive, and/or misleading;

 b. whether Defendant engaged in false, deceptive, and/or misleading advertising;

 c. whether Defendant's conduct as alleged herein violates the Florida Deceptive and Unfair trade Practices Act;

 d. whether Defendant's conduct as alleged herein constitutes a breach of warranty;

 e. whether Defendant's conduct as alleged herein constitutes unjust enrichment;

 f. whether Defendant knew or should it have known that its representations and advertisements regarding Softsoap Antibacterial were unsubstantiated, false, deceptive, and/or misleading;

 g. whether Plaintiff and the other Class members who purchased Softsoap Antibacterial suffered monetary damages and the proper measure of that loss;

 h. whether the Plaintiff and the other Class members are entitled to an award of punitive damages; and

 i. whether the Plaintiff and the other Class members are entitled to declaratory and/or injunctive relief.

54.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all Class members purchased the Softsoap Antibacterial products after exposure to the same fundamental misrepresentation that Softsoap Antibacterial is more effective than ordinary liquid hand soap, whether that misrepresentation was disseminated through Defendant's product packaging, product website, or through other advertisements or marketing.

55.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the Class' interests.

56.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class as a whole.

57.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the

class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### FLORIDA STATUTES §§ 501.201 et seq.

58.     Plaintiff readopts and incorporates by reference each of the above paragraphs of this Complaint as though fully stated herein.

59.     Plaintiff and all class members are "consumers" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by Florida Statutes § 501.203 (7) and (8) respectively.

60.     Florida Statutes § 501.201 et seq. was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce. Defendant's actions and/or omissions as described herein violate this statute in that Defendant misrepresented and omitted material information regarding the Product.  Defendant also engaged in false advertising as set forth herein with respect to the Product in violation of this statute.

61.     As a result of the wrongful conduct described herein, Plaintiff and members of the class suffered damages.

62.     Plaintiff and members of the class are entitled to compensatory damages, equitable and declaratory relief, costs, and reasonable attorneys' fees.

### COUNT II
### VIOLATION OF FLORIDA STATUTES § 817.41

63.     Plaintiff readopts and incorporates by reference each of the above paragraphs of this Complaint as though fully stated herein.

64.     Florida Statutes § 817.41 declares it "unlawful for any person to disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement."

65.     Florida Statutes § 817.40 defines a "misleading advertisement" as including "any statements made, or disseminated, in oral, written, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services."

66.     Defendants disseminated misleading advertisements to the general public of the State of Florida regarding the health benefits and effectiveness of Softsoap Antibacterial in violation of § 817.41 with the intent and purpose of inducing members of the public to purchase products provided by Defendant. Indeed, at the time Defendant disseminated such misleading advertisements, Defendant knew such advertisements to be false and intended for members of the general public, including Plaintiff and class members, to rely on such misleading advertisements.

67.     Plaintiff and class members relied upon the misleading advertisements disseminated by Defendant when purchasing Softsoap Antibacterial.

68.     As a proximate result of Defendants' dissemination of misleading advertisements in violation of § 817.41, Plaintiff and class members sustained injury and damage.

69.     Plaintiff and class members are entitled to attorneys' fees under Florida Statutes §817.41(6).

70.     Plaintiff and members of the class are entitled to compensatory damages, equitable and declaratory relief, costs, and reasonable attorneys' fees.

## COUNT III
## (BREACH OF EXPRESS WARRANTY)

71.     Plaintiff readopts and incorporates by reference each of the above paragraphs of this Complaint as though fully stated herein.

72.     Plaintiff, and each of the other Class members, formed a contract with Colgate at the time they purchased the Softsoap Antibacterial product(s).  The terms of that contract include the promises and affirmations of fact made by Colgate on the Softsoap Antibacterial labels and through the advertising and marketing campaign, as alleged above.  Colgate's Product labeling and advertising constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the other members of the Class, on the one hand, and Colgate, on the other.

73.     All conditions precedent to Colgate's liability under the warranty have been performed by Plaintiff and each of the other members of the Class.

74.     Colgate breached the terms of the express warranty by not providing to Plaintiff and the other Class members benefits promised and represented with respect to the Softsoap Antibacterial products.

75.     As a result of Colgate's breach of warranty, Plaintiff and the other Class members have been damaged in the amount of the purchase price of the Softsoap Antibacterial products they purchased.

## COUNT IV
## (UNJUST ENRICHMENT)

76.     Plaintiff readopts and incorporates by reference each of the above paragraphs of this Complaint as though fully stated herein.

77. This claim is asserted in the alternative on behalf of Plaintiff and the other Class members to the extent that any contracts do not govern the entirety of the subject matter of the dispute with Colgate.

78. Plaintiff and the other Class members conferred a tangible economic benefit upon Colgate by purchasing Softsoap Antibacterial products. Plaintiff and the other Class members would have expected remuneration from Colgate at the time this benefit was conferred had they known that the Product did not perform as promised and has been widely criticized by government officials and scientists.

79. As a direct and proximate result of Colgate's misconduct as set forth above, Colgate has been unjustly enriched at the expense of Plaintiff and the other Class members.

80. It would be inequitable for Defendant to retain the profits, benefits and other compensation obtained by its wrongful conduct in selling its Softsoap Antibacterial products.

81. Plaintiff, on behalf of herself and the other Class members, seeks restitution from Colgate, and an order of this Court disgorging all profits, benefits, and other compensation obtained by Colgate from its wrongful conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Irene Porter, individually and on behalf of the Class proposed in this Complaint, respectfully requests:

A. the Court certify the Class pursuant to Fed. R. Civ. P. 23(b)(2), and 23(b)(3), and adjudge Plaintiff to be an adequate representative thereof;

B. the Court enter an Order requiring Defendant to pay Plaintiff's and the other Class members' actual damages (including multiple damages) or statutory damages, whichever is greater;

C.      the Court enter an Order awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices set forth above, including all unlawful false advertising practices; directing Defendant to retrieve existing false and misleading advertising and promotional materials; directing Defendant to engage in a corrective advertising campaign; and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and/or disgorgement of gains from any unlawful conduct as alleged herein;

E.      the Court enter an Order awarding Plaintiff and the other members of the Class their expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law; and

F.      for such other and further relief as may be just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

**Dated:** November 7, 2011

By:_____

Jordan L. Chaikin
Florida Bar Number 0878421
**PARKER WAICHMAN ALONSO LLP**
3301 Bonita Beach Road, Suite 101
Bonita Springs, Florida 34134
Telephone: (239) 390-1000
Facsimile: (239) 390-0055
Email: jchaikin@yourlawyer.com

Adam J. Levitt (ARDC# 6216433)
Edmund S. Aronowitz (ARDC# 6304587)
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Florida  60603
Telephone:  (312) 984-0000
Facsimile:  (312) 984-0001
levitt@whafh.com

21

aronowitz@whafh.com

Richard J. Arsenault
**NEBLETT, BEARD & ARSENAULT**
Post Office Box 1190
Alexandria, Louisiana  71309
Telephone:  (318) 487-9874
Facsimile:  (318) 561-2591
rarsenault@nbalawfirm.com

Eric D. Holland
**HOLLAND, GROVES, SCHNELLER**
  **& STOLZE, LLC**
300 North Tucker, Suite 801
St Louis, Missouri  63101
Telephone:  (314) 241-8111
Facsimile:  (314)-241-5554
eholland@allfela.com

Charles E. Schaffer
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Telephone:  (215) 592-1500
Facsimile:   (215) 592-4663
cschaffer@lfsblaw.com

John R. Climaco
John A. Peca
**CLIMACO, WILCOX, PECA,**
  **TARANTINO & GAROFOLI CO., L.P.A.**
55 Public Square, Suite 1950
Cleveland, Ohio  44113
Telephone: (216) 621-8484
Facsimile:  (216) 771-1632
jrclim@climacolaw.com
japeca@climacolaw.com

Patrick G. Warner
**CLIMACO, WILCOX, PECA,**
  **TARANTINO & GAROFOLI CO., L.P.A.**
35 North Fourth Street, Suite A
Columbus, Ohio  43215
Telephone: (614) 437-2522
Facsimile:  (614) 386-1029
pgwarn@climacolaw.com

Joseph J. Siprut

**SIPRUT PC**
122 South Michigan Avenue, Suite 1850
Chicago, Florida  60603
Telephone:  (312) 588-1440
Facsimile:  (312) 427-1850
jsiprut@siprut.com

*Counsel for Plaintiff*